# United States Court of Appeals for the Federal Circuit

---

**JTEKT CORPORATION,**
*Appellant*

**v.**

**GKN AUTOMOTIVE LTD.,**
*Appellee*

---

2017-1828

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2016-00046.

---

Decided: August 3, 2018

---

WILBUR T. BAKER, Oblon, McClelland, Maier & Neustadt, LLP, Alexandria, VA, argued for appellant. Also represented by LISA MANDRUSIAK, RYAN W. SMITH.

LINDA METTES, Brooks Kushman PC, Southfield, MI, argued for appellee. Also represented by SANGEETA G. SHAH, KRISTIN LEE MURPHY.

---

Before PROST, *Chief Judge,* DYK and O'MALLEY, *Circuit Judges.*

DYK, *Circuit Judge.*

GKN Automotive LTD ("GKN") owns U.S. Patent No. 8,215,440 ("the '440 patent"). In inter partes review ("IPR"), the Patent Trial and Appeal Board ("the Board") found claims 2 and 3 of the '440 patent not unpatentable. JTEKT Corporation ("JTEKT"), the petitioner in the IPR, appealed. Because JTEKT lacks standing to appeal, we dismiss the appeal.

## BACKGROUND

GKN's '440 patent describes a drivetrain for a four-wheel drive vehicle that is made up of primary and secondary drivetrains. The drivetrain can be switched between two-wheel drive mode and four-wheel drive mode. The claimed drivetrain operates to reduce the number of rotating components when the secondary drivetrain is disconnected.

JTEKT petitioned for IPR of the patentability of claims 1–7 of the '440 patent in IPR2016-00046. The Board instituted IPR on all challenged claims. After institution, GKN disclaimed claims 1, 4, and 5. Accordingly, the IPR focused on whether JTEKT had shown that claims 2 and 3 would have been obvious over the prior art of Teraoka in view of Watanabe and whether claims 6 and 7 would have been obvious over the prior art of Teraoka in view of Burrows. Claims 2 and 3—the claims currently on appeal—specify that two side-shaft couplings connect the secondary axle rather than one side-shaft coupling. These side-shaft couplings provide both transverse and longitudinal power distribution between the left and right wheels and the front and rear wheels.

On January 23, 2017, the Board held that claims 6 and 7 would have been obvious over Teraoka in view of Burrows, but that JTEKT did not show that claims 2 and 3 would have been obvious over Teraoka in view of Watanabe. The Board decided that JTEKT had failed to

establish that a person of ordinary skill "would have had a reasonable expectation of reducing vehicle weight with the proposed modification," that being the stated motivation to combine.  J.A. 0032.

GKN did not appeal the Board's decision with respect to claims 6 and 7.  But JTEKT appealed the Board's decision regarding claims 2 and 3.  GKN's motion to dismiss the appeal based on lack of standing was denied by a motions panel of this court, which "deem[ed] it the better course for the parties to address the standing issue in their briefs."  Order, No. 17-1828, ECF No. 23.  JTEKT asserts that we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Under the IPR statute, any person or entity may petition the Patent Office to institute an IPR proceeding.  35 U.S.C. § 311(a).  There is no requirement that the petitioner have Article III standing, as "[p]arties that initiate [IPRs] need not have a concrete stake in the outcome; indeed, they may lack constitutional standing."  *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2143–44 (2016).  We have similarly concluded that "Article III standing is not necessarily a requirement to appear before an administrative agency."  *Consumer Watchdog v. Wis. Alumni Research Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) (citation omitted).  The statute also provides that an unsuccessful petitioner may appeal an adverse final written decision.  35 U.S.C. § 141(c) ("A party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board . . . may appeal the Board's decision . . . to the United States Court of Appeals for the Federal Circuit.").

In a series of decisions, we have held that the statute cannot be read to dispense with the Article III injury-in-fact requirement for appeal to this court.  In *Phigenix*,

*Inc. v. Immunogen, Inc.*, we wrote that "[a]n appellant's obligation to establish an injury in fact remains firm even though it need not 'meet all the normal standards for redressability and immediacy' when, as here, a statute provides that appellant with a right to appeal." 845 F.3d 1168, 1172 n.2 (Fed. Cir. 2017) (citations omitted); *see also* 35 U.S.C. § 141(c). Phigenix lacked standing to appeal an IPR because it did not face an actual injury. *Phigenix*, 845 F.3d at 1176. Phigenix did not argue that it was at risk of "infringing the [patent at issue], that it is an actual or prospective licensee . . . or that it otherwise plans to take any action that would implicate the patent . . . . Instead, Phigenix assert[ed] that it . . . suffered an actual economic injury because the [patent at issue] increases competition" for Phigenix. *Id.* at 1173–74. This was not enough to establish Article III standing. *Id.* at 1175–76.

Similarly, in *Consumer Watchdog,* a nonprofit organization (Consumer Watchdog) petitioned for IPR concerning a patent for embryonic stem cells, but was unsuccessful before the Board. *Consumer Watchdog*, 753 F.3d. at 1260. Consumer Watchdog appealed to this court. Consumer Watchdog did not "allege[] any involvement in research or commercial activities involving human embryonic stem cells. Nor . . . that it [was] an actual or prospective competitor of [the patent owner] or licensee." *Id.* We held that there was no standing "[b]ecause Consumer Watchdog [did] not establish[] an injury in fact." *Id.* These cases stressed that the "obligation to establish an injury in fact" for appellants "remains firm." *Phigenix*, 845 F.3d. at 1172 n.2.

Supreme Court cases establish that the injury in fact must be "an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (emphasis in original) (citation omitted). Injuries that are "conjectural or hypothetical" will not provide standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cita-

tions omitted).  That being said, the Supreme Court has pointed out that "[t]he rule that a plaintiff must . . . bet the farm, or . . . risk . . . damages . . . before seeking a declaration of its actively contested legal rights finds no support in Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 134 (2007).  Our cases establish that typically in order to demonstrate the requisite injury in an IPR appeal, the appellant/petitioner must show that it is engaged or will likely engage "in an[] activity that would give rise to a possible infringement suit," *Consumer Watchdog*, 753 F.3d at 1262, or has contractual rights that are affected by a determination of patent validity, *see generally MedImmune*, 549 U.S at 137.

As the party seeking judicial review, JTEKT has the burden of establishing that it possesses the requisite injury.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).  Thus, in IPR appeals, "an appellant must . . . supply the requisite proof of an injury in fact when it seeks review of an agency's final action in a federal court," by creating a necessary record in this court, if the record before the Board does not establish standing.  *Phigenix*, 845 F.3d at 1171–72.  When the record before the Board is inadequate, the appellants "must supplement the record to the extent necessary to explain and substantiate its entitlement to judicial review," such as by submitting "affidavits or other evidence to demonstrate its standing." *Id.* at 1173 (citations omitted).

The fact that JTEKT has no product on the market at the present time does not preclude Article III standing, either in IPRs or in declaratory judgment actions.  *See, e.g., Altaire Pharms., Inc. v. Paragon Bioteck, Inc.*, 889 F.3d 1274, 1280–83 (Fed. Cir. 2018).  Both IPRs and declaratory judgment actions enable a party to secure a judicial determination in advance of actual, liability-creating injury.  But where the party relies on potential infringement liability as a basis for injury in fact, but is not currently engaging in infringing activity, it must

establish that it has concrete plans for future activity that creates a substantial risk of future infringement or likely cause the patentee to assert a claim of infringement.

While JTEKT has submitted two declarations in support of its standing, JTEKT's problem is that these declarations do not establish that its planned product would create a substantial risk of infringing claims 2 or 3 of GKN's '440 patent or likely lead to charges of infringement. GKN has not alleged infringement, *see PPG Indus., Inc. v. Valspar Sourcing, Inc.*, 679 F. App'x 1002, 1004 (Fed. Cir. 2017) (non-precedential), and, while JTEKT and GKN are competitors generally, JTEKT expressly conceded that "no product is yet finalized." J.A. 1642, at ¶ 13. JTEKT's product is in development and "will continue to evolve." J.A. 1642, at ¶ 15. The declaration of Mikiharu Oyabu, JTEKT's Chief Engineer, admits that "JTEKT is [still] currently validating its design, including tuning and conducting customer demonstrations. . . . [t]he concept will continue to evolve and may change until it is completely finalized." J.A. 1642, at ¶¶ 14–15.

The declaration of Koji Morita, a patent engineer for JTEKT, states that JTEKT began development on its own driveshaft concept in 2015, and opines that there is a "potential risk of infringement." J.A. 1636, at ¶ 14. But JTEKT repeatedly stressed that "[b]ecause JTEKT has not yet developed a final product, there is nothing that can be analyzed for infringement." J.A. 1644, at ¶ 23; *see also* J.A. 1637, at ¶ 16. Morita admits that "because the product was not—and is not—yet finalized, JTEKT cannot definitively say whether or not it will infringe the '440 patent and the potential risk of infringement . . . is impossible to quantify at this time." J.A. 1637, at ¶ 16. JTEKT's declarations only state that "the general features of JTEKT's current concepts [are] similar enough to the features of the '440 patent," to justify filing the IPR to "negat[e] any potential risk for JTEKT . . . down the line," J.A. 1636, at ¶ 14, and that "JTEKT determined that the

'440 patent posed a risk *to future development* significant enough to warrant filing the IPR." J.A. 1641, at ¶ 10 (emphasis added). To be sure, IPR petitioners need not concede infringement to establish standing to appeal. *See MedImmune*, 549 U.S. at 134. But we conclude that JTEKT has not established at this stage of the development that its product creates a concrete and substantial risk of infringement or will likely lead to claims of infringement.

Although JTEKT argues that the creation of estoppel based on its participation in the IPR constitutes a separate, and independent, injury in fact, we have explained that "estoppel provision[s] 'do[] not constitute an injury in fact' when . . . the appellant 'is not engaged in any activity that would give rise to a possible infringement suit.'" *Phigenix*, 845 F.3d at 1175–76 (quoting *Consumer Watchdog*, 753 F.3d at 1262).

## CONCLUSION

Because JTEKT has failed to establish an actual injury sufficient to confer Article III standing, we dismiss this appeal.

## **DISMISSED**

### COSTS

No costs.