NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**GOOGLE LLC, LG ELECTRONICS, INC.,**
*Appellants*

**v.**

**CONVERSANT WIRELESS LICENSING S.A.R.L.,**
*Appellee*

———————————

2017-2456

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2015-01715.

———————————

Decided: November 20, 2018

———————————

NAVEEN MODI, Paul Hastings LLP, Washington, DC, argued for appellants. Also represented by STEPHEN BLAKE KINNAIRD, JOSEPH PALYS, DANIEL ZEILBERGER.

TAREK N. FAHMI, Ascenda Law Group, PC, San Jose, CA, argued for appellee. Also represented by HOLLY J. ATKINSON.

———————————

Before O'MALLEY, CHEN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

Google LLC and LG Electronics, Inc. (Petitioners) appeal from the final written decision of the U.S. Patent and Trademark Office, Patent Trial and Appeal Board (Board) in an *inter partes* review (IPR) proceeding finding that Appellants did not show claims 1–15 of U.S. Patent No. 7,072,667 (the '667 patent), assigned to Conversant Wireless Licensing S.A.R.L. (Patent Owner), to be unpatentable as anticipated or obvious.

Because the Board's final written decision failed to consider Petitioners' primary argument, we vacate and remand.

## BACKGROUND

The '667 patent, entitled "Location Information Service for a Cellular Telecommunications Network," was filed on December 31, 2001. According to the '667 patent, prior art mobile devices used commercial location finding services, such as Finder™. J.A. 28 at 1:31–34. A user could find the location of other members of a group of subscribers by defining a list of friends that they wanted to be able to locate. *Id.* at 1:34–37. This system involved pre-registration with the vendor of the Finder™ service. *Id.* at 1:37–39. When a user wanted to know the location of a friend, the user initiated a request and selected the name of the friend. *Id.* at 1:39–42. The Finder™ service then located both the user and the friend and calculated the distance and direction between them, which was communicated back to the user. *Id.* at 1:42–45.

The '667 patent states that a disadvantage of the prior art system is that the user needed to pre-register with the system. *Id.* at 1:46–48. The '667 patent describes the invention as providing location service information "independently of aforesaid vendor." *Id.* at 1:52–54. The patent claims capture this feature by reciting that the

method is performed without pre-registering the mobile station for the location finding service. Claim 1 recites:

> 1. A method of providing a location finding service to mobile stations in a cellular telecommunications network, comprising:
>
> sending a request for location finding information from a mobile station as a message through the network to a location message server;
>
> retrieving data from a data store corresponding to the location finding information based on the cell occupied by at least one mobile station; and
>
> sending the data through the network from the location message server as a message to the mobile station that requested the location finding information; and wherein
>
> the method is performed *without pre-registering the mobile station for the location finding service.*

J.A. 30 (emphasis added).

In their IPR petition, Petitioners argued that PCT Publication No. WO 00/36430 (Staack) discloses every limitation of claim 1. As to the claim limitation "without pre-registering the mobile station for the location finding service," Petitioners contended it was a negative limitation that Staack satisfies because "Staack nowhere discloses that pre-registration is required to access the location-based services." J.A. 61. Petitioners cited two PTAB decisions as supporting this conclusion. *See CLIO USA, Inc. v. The Procter and Gamble Company*, IPR2013-00448, Paper No. 15 at 3 (Feb. 4, 2014) (stating that "[n]egative limitations may be satisfied by silence in the prior art"); *Palo Alto Networks, Inc. v. Juniper Networks, Inc.*, IPR2013-00466, Paper No. 17 at 18 (Jan. 28, 2014) (stating that, "[a]lthough a negative limitation is permissible, it merely recites what a claim lacks and, therefore,

is likely to be broad by its very nature. Consequently, a negative limitation requiring the absence of an element may be adequately described by a cited prior art reference if that reference does not otherwise require the presence of the element recited in the negative limitation."); *see also* J.A. 61. Petitioners also cited a declaration by their expert to support their argument. J.A.61; *see also* J.A. 723–24.

To further support its position that Staack meets the "without pre-registering" limitation, the petition next went on to explain, preemptively, why a particular passage in Staack does not teach a pre-registering requirement: "to the extent Patent Owner proposes that maintaining and using a list of entities that are permitted to receive location finding information is considered registering, *Staack* makes clear that such features are optional." J.A. 62 (emphasis in original). Staack discloses that, for confidentiality reasons, the second (target user) mobile station may store a list of entities, which may include the first (requesting user) mobile station, that are allowed to view the second mobile station's location. *See* J.A. 533. Staack describes this list as "preferred." Accordingly, Petitioners argued, Staack discloses that the list is optional, and under the case law explaining that a prior art reference that discloses "optional inclusion" of a feature encompasses a disclosure of embodiments that "both do and do not contain" the feature, Staack discloses a method "without pre-registering." J.A. 62 (citing *Upshur-Smith Labs., Inc. v. Pamlab*, 412 F.3d 1319, 1322 (Fed. Cir. 2005)).

The Patent Owner's preliminary response argued that Staack does explicitly disclose pre-registration through the use of a "mobile subscriber's home location data from a billing center or subscriber database." J.A. 129. The Board found this argument unpersuasive, noting in its institution decision that registration of mobile users, including identifying users' phone numbers or subscrip-

tion information, "is not commensurate with registration *for a location finding service*, as recited in claim 1." J.A. 156 (emphasis in original). The Patent Owner also argued that Staack's second mobile station list—the list Petitioners referred to in their preemptive argument—is "not germane" to pre-registration because "[t]hese considerations of confidentiality exist whether or not the MS1 user is pre-registered for the mobile location service or not." J.A. 132.

In its institution decision, the Board clearly understood that Petitioners raised two arguments in their petition (the second one being conditional): (1) that Staack's silence as to pre-registration constitutes disclosure of the negative limitation (the "negative-limitation argument"); and (2) if the Patent Owner argues that the second mobile station's list constitutes pre-registration, then the pre-registration is optional and therefore Staack still meets the "without pre-registering" limitation under *Upshur-Smith* (the "optional-feature" argument). J.A. 154–58. The Board used the language "argue" to describe Petitioners' first argument and "further argue" to describe Petitioner's second argument. J.A. 154. The Board concluded that it was persuaded based on the record before it that Staack does satisfy the "without pre-registering" limitation. J.A. 155–56. The Board stated that (1) it was not persuaded by Patent Owner that Staack explicitly discloses pre-registering; (2) it was persuaded that Staack's methods are performed without pre-registration; and (3) "without pre-registering" is a negative limitation. J.A. 156–57. The Board finally noted that the Petitioners' second, conditional argument was of no moment because Staack's discussion of the second mobile station list does not constitute pre-registration of the first mobile station, as recited in the claims. J.A. 158. The Board instituted the proceeding, finding that Petitioners showed a reasonable likelihood that they would prevail in establishing that Staack anticipates claims 1–3

and 8–14 based on, among other things, Petitioners' argument as to the negative limitation, and renders claims 4–7 and 15 obvious in view of Staack combined with additional references. *See* J.A. 158, 160, 163.

In its response, the Patent Owner repeated many of the same arguments it raised in its preliminary response, and it noted an additional passage in Staack that it believed discloses pre-registration:  Staack's citation to GSM 03.71.  J.A. 219.  The Patent Owner cited its expert's declaration to conclude that a person of ordinary skill in the art reading Staack would understand the citation to GSM 03.71, which provides mechanisms to support mobile location services of operators, to mean that mobile users must be pre-registered with location finding services.  J.A. 219–21 (citing J.A. 1190–93).  In their reply, Petitioners disagreed, focusing in part on Staack's statement that an embodiment "*could* be in accordance with GSM 03.71."  J.A. 265 (emphasis in original).  Because the word "could" is optional in nature, Petitioners argued, Staack still discloses a method being performed without pre-registration. *Id.*

Without explanation, the Board's final written decision diverged from its institution decision and conflated its analysis for Petitioners' negative-limitation argument into its analysis for the non-instituted optional-feature argument.  J.A. 8–11.  The Board repeated its concerns about the optional-feature argument it identified in its institution decision, that Staack's second mobile station list does not constitute pre-registration of the first mobile station.  J.A. 10–11.  The logical result of this finding was that this feature in Staack could not defeat Petitioners' claim that Staack satisfies the "without pre-registering" limitation.  Without addressing the negative-limitation argument or making a finding that Staack *does* disclose pre-registration, the Board concluded that the Petitioners did not meet their burden of proving that Staack discloses the "without pre-registering" element. *Id.*  The Board did

not explain why it reached the opposite conclusion that it reached in its institution decision with respect to the negative-limitation argument. *See id.*

Petitioners appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## STANDARD OF REVIEW

"We review the Board's IPR decisions [under the APA] to ensure that they are not arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with law . . . [or] unsupported by substantial evidence." *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017). "We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015).

## DISCUSSION

### A. Standing

Although the Patent Owner did not argue that Petitioners lack standing in its original briefing, we asked for supplemental briefing from both parties to determine whether Google and LGE have standing to bring this appeal. "Standing requires an appellant to have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1004 (Fed. Cir. 2018). "As the party seeking judicial review, the appellant bears the burden of proving that it has standing." *Id.* One typical way for a petitioner-appellant to prove standing is by establishing "that its product creates a concrete and substantial risk of infringement or will likely lead to claims of infringement." *JTEKT Corp. v. GKN Auto. LTD.*, 898 F.3d 1217, 1221 (Fed. Cir. 2018).

In *DuPont*, we agreed that DuPont had standing because it operated a plant that was capable of infringing the patent at issue, and thus there was a substantial risk of future infringement. *DuPont*, 904 F.3d at 1005. DuPont had never been sued on the patent at issue, but it was a competitor of the patent owner, who alleged before the Board that DuPont's processes were "embraced by the claims in the '921 patent." *Id.* at 1003–04. The patent owner also denied DuPont's request for a covenant not to sue, which we found further confirmed that DuPont's risk of injury was not "conjectural" or "hypothetical." *Id.*

The record on appeal presents an even stronger basis for standing here than that in *DuPont*. In 2014, LGE was sued for infringement of the '667 patent. The Patent Owner's infringement contentions implicated both LGE and Google: "LG Maps-Enabled Devices . . . and the Google Maps application (typically pre-installed) perform the claimed method." Petitioners' Oct. 16, 2018 Ltr. at Ex. C, p. 1. Although the infringement contentions depicted only claims 12–15 (which have been since canceled in a separate inter partes review proceeding), the Patent Owner "expressly reserve[d] the right to supplement or modify" them, and the complaint was not limited to any particular claims. *See id.* The Patent Owner similarly reserved the right to substitute "appropriate claims in the remaining patents" for claims 12 and 13 of the '667 patent in its Election of Asserted Claims. *Id.* at Ex. D, p. 2. Ultimately, the Patent Owner withdrew the '667 patent "without losing rights," and the district court dismissed the '667 patent without prejudice. The Patent Owner refused to grant a covenant not to sue to LGE or Google.

We find LGE's and Google's risk of infringement to be concrete and substantial. LGE was previously accused of infringing the '667 patent, and, throughout litigation, the Patent Owner continually reserved its right to assert the claims that are at issue in this appeal. The Google Maps application was directly implicated in the Patent Owner's

infringement contentions. As in *DuPont*, the Patent Owner here refused to grant a covenant not to sue. And, unlike in *JTEKT* where there was no product yet finalized, LGE and Google both currently market and sell the accused products. *See JTEKT*, 898 F.3d at 1220–21.

Moreover, if LGE or Google were to be sued on the '667 patent in the future, LGE may be prohibited from filing an IPR under 35 U.S.C. § 315(b). And both LGE and Google would potentially be collaterally estopped under 35 U.S.C. § 315(e) from making certain anticipation and obviousness arguments. *See, e.g., Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 337 (1980); *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016). We therefore conclude that Google and LGE have Article III standing to bring this appeal.

## B. Sufficiency of the Board's Decision

In its institution decision, the Board clearly and correctly understood that Petitioners made two distinct arguments in their petition: (1) the "negative-limitation" argument and (2) the contingent "optional-feature" argument. J.A. 154–58. The Board instituted IPR proceedings because it found that the negative-limitation argument was likely to prevail and stated that it need not consider the contingent optional-feature argument because that feature in Staack did not disclose pre-registration as that term was used in the '667 patent. J.A.158. Yet, in its final written decision, the Board concluded that Petitioners' arguments failed without even discussing Petitioners' negative-limitation argument. *See* J.A. 8–11. Instead, the Board simply reiterated that the "optional" feature that Petitioners said *the Patent Owner* may argue (and that the Patent Owner ultimately did not argue) constitutes pre-registration does not in fact constitute pre-registration. *See* J.A. 8–11.

We have previously found that the appropriate course of action when the Board's analysis is incomplete and fails to address key arguments and issues properly before it is to vacate and remand the findings for further consideration. *See, e.g.*, *Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1321 (Fed. Cir. 2017). Accordingly, we vacate and remand the Board's decision for the Board to consider Petitioners' negative-limitation argument consistent with this opinion and the Board's institution decision. On remand, the Board should also consider all arguments and evidence raised in the Patent Owner's response and the Petitioners' reply as to whether Staack satisfies the "without pre-registering" limitation.

**VACATED AND REMANDED**