# United States Court of Appeals for the Federal Circuit

---

**IRONSOURCE LTD.,**
*Appellant*

**v.**

**DIGITAL TURBINE, INC.,**
*Appellee*

---

2024-1831

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2022-00053.

---

Decided: April 7, 2026

---

PAUL D. ACKERMAN, Acknowledge Ip P.C., Syosset, NY, argued for appellant. Also represented by GARY ABELEV, ARMIN GHIAM, Hunton Andrews Kurth LLP, New York, NY; MAYA M. ECKSTEIN, Richmond, VA; GREGORY LAWRENCE PORTER, Houston, TX.

TODD RICHARD GREGORIAN, Fenwick & West LLP, San Francisco, CA, argued for appellee. Also represented by JONATHAN G. TAMIMI, Seattle, WA; DANIEL BROWNSTONE, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC, New York, NY.

---

2                    IRONSOURCE LTD. v. DIGITAL TURBINE, INC.

Before MOORE, *Chief Judge*, LOURIE and REYNA, *Circuit Judges*.

MOORE, *Chief Judge*.

ironSource Ltd. (ironSource) appeals a post-grant review (PGR) final written decision from the Patent Trial and Appeal Board (Board) granting Digital Turbine, Inc.'s (DT) Revised Motion to Amend proposing substitute claims 23–37 in U.S. Patent No. 11,157,256. Because ironSource fails to establish an injury in fact sufficient to confer standing to appeal, we dismiss.

## BACKGROUND

DT owns the '256 patent, which discloses downloading and installing mobile device applications in the background instead of directing a user to an application store. '256 patent at 1:52–2:5. ironSource petitioned the Board for PGR of original claims 1–22 of the '256 patent, asserting various grounds under 35 U.S.C. §§ 101, 102, and 103. J.A. 95–198. After the Board instituted PGR, DT filed a contingent motion to amend with proposed claims which the Board subsequently indicated in its preliminary guidance were unpatentable. J.A. 361–403; J.A. 497–520. DT filed its Revised Motion to Amend, proposing different substitute claims 23–37. J.A. 571–608. Substitute claim 23, which replaces original independent claim 1, is representative:

> 23.[1] (Substitute for claim 1) A network-connected device configured for running software applications, comprising:

---

[1]    Changes from claim 1 of the '256 patent, including added limitations [h] and [i], are represented here as depicted in the Joint Appendix. J.A. 600–01. Similar limitations are included in substitute claims 31 and 37, which

[a] a network interface configured for communicating over a network;

[b] at least one non-transitory computer readable storage medium storing instructions; and

[c] at least one processor associated with said network interface and said storage medium, configured for executing said instructions to:

[d] identify that a link for installation of a first software application is selected by user interaction with a second software application running on said device, the link being embedded in content displayed on said device by the second software application;

[e] in response to said identifying, determine whether an installation client for downloading and installing applications on said device is available on said device, said installation client comprising a third software application;

[f] <u>responsive to a determination that the</u> ~~when said~~ installation client is available on said device:

[g] invoke, without exiting said second software application, said installation client for downloading and installing applications

---

replace corresponding original independent claims 14 and 21, respectively.  J.A. 603–07.

on said device to run in the background on said device;

[h] said installation client checking whether said second software application is eligible to use capabilities of the installation client, wherein said installation client identifies said second software application as eligible responsive to said second software application having been provided with a unique eligibility token by a server as a result of said second software application having registered with the server;

[i] said installation client querying an address repository for a network address of an installation file for said first software application and receiving the network address in response to the query;

[j] instruct said invoked installation client to automatically download [[an]] said installation file of said first software application to said device over said network using said network interface in the background on said device, without directing said user interaction to an app store; and

[k] using said downloaded installation file, install said first software application on said device in the background on said device while maintaining a user experience of interaction with said second software application in the foreground; and

[l] responsive to a determination that the when said installation client is unavailable on said device, redirect said device to an app store for downloading and installing

said first software application on said de-
vice.

J.A. 600–01.

The Board granted the Revised Motion to Amend be-
cause ironSource failed to show, by preponderant evidence,
the proposed substitute claims were unpatentable or pa-
tent ineligible. *IronSource Ltd. v. Digital Turbine Inc.*,
No. PGR2022–00053, 2024 WL 1098132, at *24 (P.T.A.B.
Mar. 12, 2024). The Board also determined original claims
1–22 were unpatentable in light of its decision in a previous
PGR holding unpatentable all challenged claims of the par-
ent patent, U.S. Patent No. 10,782,951. *Id.* at *4, *7; *Iron-
Source Ltd. v. Digital Turbine Inc.*, No. PGR2021–00096,
2023 WL 36221, at *40 (P.T.A.B. Jan. 4, 2023). ironSource
appeals. We have jurisdiction to review final decisions of
the Board pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

DT argues ironSource lacks Article III standing to ap-
peal. Appellee Br. 26–33. Article III standing is a thresh-
old jurisdictional issue that must be addressed before a
court can reach the merits of an appeal. *Abraxis Biosci-
ence, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir.
2010) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–
61 (1992)). Although a party need not establish Article III
standing to file a PGR petition or obtain a Board decision,
a party challenging the validity of a patent must establish
Article III standing once it seeks review in this Court.
*Allgenesis Biotherapeutics Inc. v. Cloudbreak Therapeutics,
LLC*, 85 F.4th 1377, 1380 (Fed. Cir. 2023).

As the party seeking review, ironSource bears the bur-
den to prove it has standing. *Phigenix, Inc. v. Immunogen,
Inc.*, 845 F.3d 1168, 1171 (Fed. Cir. 2017). We accept as
true an appellant's material representations of fact for pur-
poses of assessing standing. *Gen. Elec. Co. v. Raytheon
Techs. Corp.*, 983 F.3d 1334, 1342 (Fed. Cir. 2020). An

appellant must have standing at the time the appeal is filed. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).

To establish standing, an appellant must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the [appellee], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish an injury in fact, an appellant must show it has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Where an appellant who is challenging the validity of a patent relies on potential infringement liability as a basis for injury in fact, "it must establish that it has concrete plans for future activity that creates a substantial risk of future infringement or likely cause the patentee to assert a claim of infringement." *JTEKT Corp. v. GKN Auto. LTD.*, 898 F.3d 1217, 1221 (Fed. Cir. 2018).

ironSource argues it has met its burden to establish an injury in fact, based on the potential infringement liability suggested by DT's "veiled threats" of infringement—namely, that DT's intellectual property covers certain "Click to Install" (C2I) features of ironSource's now-discontinued Aura product. Appellant Br. 1–4.

To establish standing, ironSource relies on the declaration of its Senior Director of Strategic Partnership Management, Lee London. J.A. 4379–90 (London Decl.). Mr. London testified that, in early 2021, he learned from ironSource's actual and potential customers that DT alleged to have one or more patents covering the C2I features. J.A. 4381–82 ¶ 4. Mr. London also testified that, because of these allegations, ironSource was compelled to modify Aura's C2I features and make business concessions, such as additional indemnifications to its customers, to mitigate the risk of potential litigation by DT. J.A. 4381–82 ¶ 4. The declaration shows that in August

2022, ironSource suspended the Aura product with modified C2I features. J.A. 4387 ¶ 23. Mr. London further testified that ironSource desires to reintroduce the C2I features but is prevented from doing so by the Board's holding that the substitute claims are patentable. J.A. 4389 ¶ 29.

Mr. London's declaration is insufficient to establish an injury in fact because, although it establishes that ironSource previously developed and released a product, it fails to demonstrate concrete plans to reintroduce this product with features that are *implicated by the substitute claims at issue. JTEKT Corp.*, 898 F.3d at 1221. The London declaration alleges DT made veiled threats that ironSource's product infringed DT's patents, which ironSource understood to refer to the '951 patent, and later the continuation, the '256 patent. J.A. 4382–83 ¶ 8. Mr. London then alleges, with no analysis, that the later-issued '256 patent claims are "substantially identical" to those of the '951 patent. *Id.* Focusing on the '256 patent's original independent claims which the Board held unpatentable, ironSource argues the '256 patent is substantially similar to the '951 patent but with broader claims. Appellant Br. 4, 7. But these independent claims are not the claims at issue. It is undisputed that the claims at issue have two limitations [h] and [i] which narrowed the claims. J.A. 601. ironSource presents neither argument nor evidence that links the earlier infringement allegations related to the '951 patent with these narrower claims of the '256 patent. The London declaration is silent as to these limitations and their relationship to the C2I features ironSource seeks to add to its products. J.A. 4379–90.

At oral argument, ironSource argued for the first time that "oblique references" to the claims at issue are sufficient under *General Electric Company v. Raytheon Technologies Corporation*, 983 F.3d 1334 (Fed. Cir. 2020). Oral Arg. at 30:59–31:07. In *General Electric*, we held the appellant had standing because its declarations plausibly

established its preferred engine design substantially risks infringing the patent at issue. 983 F.3d at 1342–43 (citing declarations tying appellant's engine design to claimed features). Though the appellant's declarations "only obliquely allude[d] to how its preferred engine design m[et] the claimed limitations," they still linked the appellant's potential product to the *claim limitations*. *Id.* The London Declaration fails to link the C2I features in ironSource's Aura product to the substitute claims. J.A. 4379–90.

Because ironSource does not show how the C2I features are implicated by the substitute claims, which introduce two narrowing limitations and issued after DT's alleged "veiled threats" of infringement, we conclude iron-Source has failed to show injury in fact based on potential infringement liability.

## CONCLUSION

We have considered ironSource's remaining arguments and find them unpersuasive. Because ironSource fails to establish an injury in fact sufficient to confer Article III standing, we dismiss the appeal for lack of jurisdiction.

## **DISMISSED**

### COSTS

Costs to DT.